UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NY FIRE WATER MOLD CORP., et al.,

Plaintiffs,

-against-

NJNY FIRE WATER MOLD CORP., et al.,

Defendants.

**OPINION AND ORDER**

26-CV-00545 (PMH)

PHILIP M. HALPERN, United States District Judge:

NY Fire Water Mold Corp. ("NY Fire Water Mold") and Brandon Marc Polichetti ("Polichetti" and together, "Plaintiffs") bring this action for damages and injunctive relief against NJNY Fire Water Mold Corp. ("NJNY Fire Water Mold") and Toniann E. Cosentino ("Cosentino" and together, "Defendants") under the Lanham Act and New York's common law. (Doc. 1, "Complaint"). Plaintiffs filed proof of service on Defendants indicating that Defendants were served with process on February 10, 2026. (Docs 8, 9). To date, Defendants have not responded to the Complaint or otherwise appeared in this action. A Clerk's Certificate of Default was entered on April 7, 2026. (Doc. 13).

On May 28, 2026, Plaintiffs moved for a default judgment, damages, and a permanent injunction against Defendants by way of an order to show cause, in accordance with the Court's Individual Practices. (*See* Docs. 15-18). Plaintiffs, at the Court's direction, filed supplemental materials in support of their request for default judgment on June 21, 2026. (*See* Docs. 20-22). The Court, on June 22, 2026, issued an Order to Show Cause directing Defendants to explain by July 24, 2026, "why final default judgment and a permanent injunction should not be entered . . . ." (Doc. 23). Plaintiffs served the Order to Show Cause and supporting papers on Defendants on July 6, 2026 and July 7, 2026. (Docs. 24-27).

As of the date of this Order, Defendants have neither appeared nor responded to the Order to Show Cause.

For the reasons set forth below, Plaintiffs' motion is GRANTED.

**BACKGROUND**

Plaintiffs have offered environmental remediation services for water, mold, smoke, microbial, and asbestos contamination under the name NY Fire Water Mold in southern New York and northern New Jersey since 2009. (Compl. ¶¶ 10). Plaintiffs also registered the domain name "nyfirewatermold.com" in 2009. (*Id.* ¶ 13). On March 25, 2014, NY Fire Water Mold was incorporated under the laws of New York. (*Id.* ¶ 12). Plaintiff Polichetti sought to register the mark "NY Fire Water Mold" in August 2019. (*Id.* ¶ 15). On March 31, 2020, the U.S. Patent and Trademark Office issued to Plaintiff Polichetti the mark "NY Fire Water Mold," Reg. No. 6,022,826, for International Class 40: Environmental remediation services, namely, treatment of water, mold, microbial, asbestos. (*Id.* ¶ 16; *see also id.*, Ex. A (United States Patent and Trademark Office registration for NY Fire Water Mold mark)).[1]

Defendant NJNY Fire Water Mold was formed on May 14, 2024 under the laws of New Jersey. (*Id.* ¶ 23). Defendants registered the domain name "njnyfirewatermold.com" that same day. (*Id.* ¶ 24). Defendants advertise, promote, provide, and supply environmental remediation services in southern New York and northern New Jersey which are identical to those provided by Plaintiffs.

[1] "[T]he mark consists of 'NY FIRE WATER MOLD' all in block letters with the words 'NY' and 'FIRE' in red, the word 'WATER' in blue and the world 'MOLD' in green. Each word is outlined in black. To the left of the wording is a stylized design of a house in white with black outlining and with a brown roof above the door of the house and the remaining roof portions in green. Flames in yellow, orange and red with black outlining are coming out of the top of the house and water in blue is in front of the house." (Compl., Ex. A).

(*Id.* ¶¶ 25, 27). According to Defendants' website, they have "helped thousands of homeowners and businesses in New York and New Jersey." (*Id.* ¶ 26; *see also* Doc. 20-4 at 2).[2]

Plaintiffs contend that Defendants created and advertised NJNY Fire Water Mold to appropriate Plaintiffs' good will and reputation and to convey a false impression that their services are sponsored, associated, or affiliated with NY Fire Water Mold. (Compl. ¶¶ 28-29). Accordingly, on December 20, 2025, Plaintiffs' counsel sent a letter to Defendants, demanding that they cease and desist their infringing activity. (*Id.* ¶ 31). Defendants did not respond to Plaintiffs' letter and continue to engage in the infringing activities alleged by Plaintiffs. (*Id.* ¶ 32).

## STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiffs' counsel complied with Rule 55(a) and Local Civil Rule 55.1, and the Clerk of Court accordingly issued a Certificate of Default against Defendants. (Doc. 13). Given Defendants' abandonment of its defense of this case and resulting default, the Court accepts the well-pled factual allegations in the Complaint as true and draws all reasonable inferences in Plaintiffs' favor. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (quoting *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004))). The Court, however, does not accept blindly the allegations concerning damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v.*

[2] Citations to specific page numbers of filings on the docket correspond to the pagination generated by ECF.

*Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). While an evidentiary hearing under Rule 55(b)(2) is not required, a plaintiff must establish through affidavits or other evidence "a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citation modified).

## ANALYSIS

### I. Liability

Plaintiffs press four claims for relief against Defendants in the Complaint: (i) trademark infringement under 15 U.S.C. § 1114; (ii) false designation of origin under 15 U.S.C. § 1125(a); (iii) trademark infringement under New York common law; and (iv) unfair competition under New York common law. (Compl. ¶¶ 35-55).

"To establish both liability for trademark infringement under 15 U.S.C. § 1114(1) and . . . false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must prove the same two elements: (1) that the plaintiff 'has a valid mark that is entitled to protection' and (2) that 'the defendant's actions are likely to cause confusion with that mark.'" *Merck Sharp & Dohme LLC v. Cent. RX 1 Inc.*, No. 25-CV-05896, 2026 U.S. Dist. LEXIS 181656, at *13-14 (E.D.N.Y. Aug. 13, 2026) (quoting *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 271 (2d Cir. 2021)), *adopted by* 2026 U.S. District. LEXIS 219399 (E.D.N.Y. Sept. 25, 2026); *see also Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996) ("To succeed on its Lanham Act claims, [plaintiff] must show that it has a valid mark that is entitled to protection under the Lanham Act and that [defendant]'s actions are likely to cause confusion with [plaintiff]'s mark."). "Under New York common law, the standards for trademark infringement and unfair competition are virtually identical to the standard under the Lanham Act, except that New York law requires an additional showing of bad faith for an unfair competition claim." *Danone US, LLC v. Chobani, LLC*, No. 25-

CV-06217, 2026 WL 2149765, at *3 (S.D.N.Y. July 27, 2026) (citation modified) (quoting *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 229 (S.D.N.Y. 2023)). Here, the Complaint plausibly alleges that Defendants violated §§ 1114 and 1125(a), thereby committing trademark infringement and unfairly competing with Plaintiffs under New York common law.

The Complaint attaches a certificate of registration of the mark with the United States Patent and Trademark Office. (*See* Compl., Ex. A). "[A] mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce . . . ." *Gruner + Jahr USA Publ. v. Meredith Corp.*, 991 F.2d 1072, 1076 (citing 15 U.S.C. §§ 1115(a)). Thus, Plaintiffs have met the first element of their claims.

Courts, in deciding whether a likelihood of confusion exists, consider the eight non-exclusive factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): "1) the strength of the plaintiff's mark, 2) the degree of similarity between the plaintiff's and the defendant's mark, 3) the proximity of the products, 4) the likelihood that the plaintiff will 'bridge the gap' between the two products, 5) actual confusion between the two marks, 6) the defendant's good faith in adopting its mark, 7) the quality of the defendant's product(s), and 8) the sophistication of buyers of the plaintiff's and defendant's goods or services." *Sports Auth.*, 89 F.3d at 960. "The evaluation of the *Polaroid* factors is not a mechanical process 'where the party with the greatest number of factors weighing in its favor wins.'" *Cambridge Pavers, Inc. v. Armorproof Paving & Masonry LI, Inc.*, No. 24-CV-07784, 2026 WL 482658, at *8 (E.D.N.Y. Feb. 20, 2026) (quoting *RiseandShine Corp. v. PepsiCo., Inc.*, No. 23-1176-CV, 2024 WL 5165388, at *2 (2d Cir. 2024)). "Instead, the inquiry focuses 'on the ultimate question of whether consumers are likely to be confused.'" *Id.* (quoting *RiseandShine*, 2024 WL 5165388, at *2).

The first *Polaroid* factor weighs in Plaintiffs' favor as Plaintiffs' mark is registered and, thus, it is "presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (1986).

The second factor also weighs in Plaintiffs' favor as "[c]ourts tend to find domain names that differ from distinctive marks only by the addition of regional identifiers or generic terms to be confusingly similar." *Capital One Fin. Corp. v. Capital One Auto Group 1*, No. 19-CV-07201, 2022 WL 683647, at *4 (E.D.N.Y. Mar. 4, 2022) (quoting *Bos. Rest. Assocs., Inc. v. Ward*, No. 17-CV-05557, 2018 WL 54566669, at *7 (E.D.N.Y. Aug. 1, 2018)).

For the third factor, the parties are "serving identical purposes in geographic proximity such that both parties are 'marketing to and targeting the same customers.'" *Cambridge Pavers, Inc.*, 2026 WL 482658, at *13. Both parties offer identical environmental remediation services in the northern New Jersey and southern New York regions. (Compl. ¶¶ 10, 25, 27). Thus, the third factor weighs in Plaintiffs' favor as well.

For the fourth factor, "because the parties' products are already in competitive proximity, there is no gap to fill, and this factor is irrelevant." *Cambridge Pavers, Inc.*, 2026 WL 482658, at *14 (citing *Starbucks Corp.*, 588 F.3d 97, 115 (2d Cir. 2009)); *see also Folkes Home Servs. Heating, Cooling, Plumbing & Elec., LLC v. Folkes Bros. Home Servs. LLC*, No. 24-CV-09844, 2026 WL 311515, at *9 (S.D.N.Y. Feb. 5, 2026) ("Because the parties already operate in the same market, this factor is neutral.").

The fifth factor weighs in Plaintiffs' favor as they have shown that Defendants' actions have caused actual confusion with Plaintiffs' mark. Namely, Plaintiffs have submitted an email from an insurance company mistakenly sending an insurance payment intended for NJNY Fire Water Mold to NY Fire Water Mold. (*See* Doc. 20 ¶ 23; Doc. 20-7). Plaintiffs also received a

negative review from a person to whom they never provided any services. (*Id.* ¶ 24). Plaintiffs contacted the reviewer and learned that Defendants were the intended target of the negative review. (*Id.* ¶ 25).

As to the sixth factor, the defendant's good faith, "it is generally true that, as soon as we see that a second comer in a market has, for no reason that he can assign, plagiarized the 'make-up' of an earlier comer, we need no more . . . we are content to accept his forecast that he is 'likely' to succeed." *Mirrorlite Mirror, Inc. v. Glassless Mirror Mfrs. Inc.*, No. 23-CV-03437, 2026 WL 1802597, at *12 (S.D.N.Y. June 23, 2026) (quoting *Am. Chicle Co. v. Topps Chewing Gum, Inc.*, 208 F.2d 560, 563 (2d Cir. 1953) (Hand, J.)). In other words, by marketing themselves similarly to Plaintiffs, Defendants have acted in bad faith. *See, e.g.*, *Bliss Trademark Holdings, LLC v. Blissy LLC*, No. 25-CV-01763, 2026 WL 2689993, at *1 (S.D.N.Y. Sept. 14, 2026) ("[F]ailing to conduct a trademark search prior to adopting [a plaintiff's] mark" and "continuing to expand and market [oneself] similarly to plaintiff after being informed about plaintiff's mark" is evidence of bad faith). And Defendants continued to market themselves similarly to Plaintiffs even after being informed of their infringing activities. (Compl. ¶¶ 31-32).

Plaintiffs do not address the seventh or eighth factors. Accordingly, the Court treats these factors as neutral. *See Cambridge Pavers, Inc.*, 2026 WL 482658, at *15-16 (treating seventh and eighth factors neutral where the plaintiff did not sufficiently address them).

Accordingly, the Court finds that Plaintiffs have established a likelihood of confusion as all of the *Polaroid* factors are either neutral or weigh in Plaintiffs' favor.

Thus, Plaintiffs have established liability for trademark infringement and false designation of origin under the Lanham Act, and trademark infringement under New York common law. Additionally, the Court already found that Defendants acted in bad faith and, thus, Plaintiffs have

established liability for unfair competition under New York common law. *See Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 406 n.6 (S.D.N.Y. 2021).[3]

II. Damages

Plaintiffs seek an award of damages against Defendants in the amount of $125,000. (Doc. 16; *see also* Doc. 21 ¶ 26). Specifically, Plaintiffs request statutory damages for infringement of their registered trademark in the amount of $125,000. (Doc. 16). Plaintiffs also seek awards of $12,080 in attorneys' fees, $637.10 in costs, and post-judgment interest. (*Id.*).

Section 1117(c) of the Lanham Act provides that a prevailing plaintiff may recover statutory damages in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," unless the infringement was willful, in which case the court may award up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)-(2). Plaintiffs argue that they are entitled to elect statutory damages because Defendants used a "counterfeit mark" under 15 U.S.C. § 1117(c). (Doc. 17 at 19-20).

However, Plaintiffs have failed to establish that defendants used a counterfeit mark under 15 U.S.C. § 1117(c) and, thus, Plaintiffs are not entitled to statutory damages. "The Lanham Act defines a counterfeit mark as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Kenyatta v. Combs*, No. 24-CV-06923, 2025 WL

[3] Plaintiffs have also established personal liability over Defendant Cosentino. *See Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) ("A showing that the officer authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability." (citation modified)). Here, Defendant Cosentino is the owner and sole member of Defendant NJNY Fire Water Mold (*see* Docs. 20-5, 20-6, 21-4) and, thus, the only person who could have authorized the infringing activities.

2636610, at *6 (S.D.N.Y. Sept. 12, 2025) (quoting 15 U.S.C. § 1127)). And while "[c]ases applying the 'substantially indistinguishable' test are inherently fact intensive . . . marks that are similar to the registered mark, but differ by two or more letters, are not likely to be considered counterfeit." *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007). Indeed, to be a counterfeit mark, a mark typically must be "identical to the registered mark as it appears in the marketplace . . . ." *Id.* Here, while Defendants' infringing mark is quite similar to Plaintiffs' mark, the marks are not "substantially indistinguishable," and Plaintiffs are therefore not entitled to statutory damages.

However, Plaintiffs may still recover actual damages under the Lanham Act. Second Circuit "case law is well settled that in order for a Lanham Act plaintiff to receive an award of *damages* the plaintiff must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 493 (2d Cir. 1998). Here, Plaintiffs have established actual consumer confusion. Specifically, Plaintiffs have submitted evidence of an insurance company emailing confirmation of an insurance payment intended for Defendants to Plaintiffs, and of a consumer giving Plaintiffs a negative review which was in fact intended for Defendants. (*See* Doc. 20 ¶¶ 23-25; Doc. 20-7). Thus, Plaintiffs are entitled to recover actual damages.

Plaintiffs may recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Plaintiffs have submitted evidence of $1,115.04 in actual damages, as Plaintiffs received notice of an insurance claim payment that was intended for Defendants in that amount. (*See* Doc. 20-7). Plaintiffs alleged in the Complaint that "[m]any of the services provided" by Plaintiffs "are covered by clients' homeowners' insurance

policies and, as a result," they "regularly seek payment for the services provided from insurance companies." (Compl. ¶ 22). Consequently, the insurance claim payment to Defendants constitutes "profits from defendant[s'] proven sales" to which Plaintiffs are entitled. *Goerge Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992); *see also Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 270 (S.D.N.Y. 2011) ("Because [plaintiff] has demonstrated that it is entitled to profits, it is required only to prove Defendants' sales.").

Plaintiffs are also entitled to $637.10 in costs, representing the fee for filing this action, process server fee, and the cost of obtaining certified copies of the NJNY Fire Water Mold's corporate formation documents. (*See* Docs. 21-9, 21-10). Plaintiffs' request for post-judgment interest (Docs. 16, 22) is also granted. Post-judgment interest shall be calculated from the date of entry of Judgment by the Clerk of the Court in accordance with 28 U.S.C. § 1961.

For attorneys' fees, the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). District courts, in assessing whether exceptional circumstances exist, are "given wide latitude as they engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances.'" *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The Court finds that exceptional circumstances exist here given the similarity between Defendants' mark and Plaintiffs' mark, Defendants' willfulness and continued use of the infringing mark even after commencement of this litigation, and Defendants' default, which has made it impossible for Plaintiffs to ascertain their true damages. *See id.* ("In that 'case-by-case exercise,' courts may consider factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation

and deterrence.'" (quoting *Octane Fitness*, 572 U.S. at 554 n.6)); *see also Next Realty, LLC v. Next Real Estate Partners LLC*, No. 16-CV-06327, 2019 WL 1757781, at *5 (E.D.N.Y. Mar. 11, 2019) ("In this case, the evidence of defendants' extensive use of plaintiff's marks, which continued after the commencement of litigation, combined with their default, renders this an exceptional case warranting an award of fees."), *adopted by* 2019 WL 1758447 (E.D.N.Y. Mar. 26, 2019).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "[T]he burden of proving the reasonableness and the necessity of the hours spent and the rates charged" rests with the party seeking payment. *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-03942, 2021 WL 1193144, at *1 (E.D.N.Y. Mar. 29, 2021). Plaintiffs' counsel, a solo practitioner, submitted, in support of the request for fees, a statement of fees showing the dates on which the services were performed, the time expended, and a description of the services completed. (Doc. 21-10).

In determining what a "reasonable fee" is, courts consider "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. Of Elections*, 522 F.3d 182, 184 (2d Cir. 2008); *see also Ramirez v. Marriott Int'l*, No. 20-CV-02397, 2023 WL 2447398, at *4 n.4 (S.D.N.Y. Mar. 10, 2023). To determine such a fee, courts consider factors like "the complexity and difficulty of the case," "the resources required to prosecute the case effectively," "the timing demands of the case," and "whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself." *Arbor Hill*, 522 F.3d at 184. The rate must be "in line with those rates prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation." *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).

Plaintiffs, represented by Marie Condoluci, request $12,080.00 in attorneys' fees. (*See* Doc. 22). Ms. Condoluci charged Plaintiffs a rate of $200.00 per hour for 60.4 total hours worked on this case. (Doc. 21 ¶¶ 20-24; Doc. 21-10). Ms. Condoluci's hourly rate is well within the bounds that courts in this district have found to be reasonable for comparable work. *See, e.g.*, *JC Hosp. v. Hochberg*, No. 23-CV-02051, 2025 WL 3124313, at *22 (S.D.N.Y. Nov. 7, 2025) (finding hourly rate of $744.60 reasonable in Lanham Act case). For the amount of attorney time spent reasonably in prosecuting a case, "the court looks to its own familiarity with the case and . . . its experience generally as well as to the evidentiary submission and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citation modified). A review of the attorney declaration and itemized billing submitted by Plaintiffs leads the Court to conclude that the number of hours expended is reasonable. The Court thus finds that all relevant factors support an award of $12,080.00 in attorneys' fees.

Accordingly, Plaintiffs are awarded $1,115.04 in actual damages, $637.10 in costs, $12,080.00 in attorneys' fees, and post-judgment interest.

III. Injunctive Relief

A court may grant a permanent injunction on a motion for default judgment in a case under the Lanham Act to prevent further violations of a plaintiff's trademark. 15 U.S.C. § 1116. "The Court may issue a permanent injunction when a plaintiff has succeeded on the merits and has demonstrated that (1) it suffered irreparable harm; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants such a remedy; and (4) that the public interest would not be disserved by the issuance of an injunction."

*3M Co. v. Performance Supply, LLC*, No. 20-CV-02949, 2023 WL 3481608, at *5 (S.D.N.Y. Apr. 26, 2023), *adopted by* 2023 WL 3480927 (S.D.N.Y. May 16, 2023).

"A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a [Lanham Act] violation . . ." 15 U.S.C. § 1116(a). "The loss of reputation and goodwill constitutes irreparable harm." *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020). Plaintiffs argue that they have "invested millions of dollars and over a decade of time and effort to create consumer and business recognition in the NY FIRE WATER MOLD MARK" and have "built up a highly valuable reputation and good will, and the public generally has come to recognize the NY FIRE WATER MOLD Mark as being identified with NY FIRE WATER MOLD." (Doc. 17 at 18). And Plaintiffs allege in the Complaint that Defendants "have appropriated, the good will and reputation of NY FIRE WATER MOLD." (Compl. ¶ 28).

Remedies available at law are inadequate to compensate for the injury to Plaintiffs' reputation and goodwill. *See 3M Co.*, 2023 WL 3481608, at *6. "A defaulting defendant may be presumed to be willing to continue their infringement of a mark." *Id.* Here, despite Plaintiffs sending Defendants a cease-and-desist letter and the filing of this suit, Defendants' website "njnyfirewatermold.com" remains active and NJNY Fire Water Mold is still a corporation registered to do business in New Jersey. (*See* Doc. 20 ¶ 27; Doc. 21-4). "Thus, there is no guarantee that monetary damages will suffice to protect Plaintiff[s'] [mark] moving forward. As such, a permanent injunction is likely necessary to remedy Plaintiff[s'] injury." *3M Co.*, 2023 WL 3481608, at *6.

There is no hardship to Defendants in enjoining them from continuing to infringe Plaintiffs' mark. Rather, "it is generally accepted that an infringer cannot claim hardship due to the loss of

ability to offer its infringing product." *Id.* Thus, the balance of hardships is in Plaintiffs' favor. Finally, the public interest would be served by the grant of a permanent injunction because "[t]he public has an interest in receiving the products that they think they are receiving." *Id.*

Accordingly, Plaintiffs are entitled to the requested permanent injunction in accordance with Fed. R. Civ. P. 54(c). Defendants, and their agents, servants, employees, and all other persons in privity or acting in concert with them are hereby permanently enjoined and restrained from:

(a) using, selling, supplying or offering to sell, or causing to be sold any product or service bearing the NY FIRE WATER MOLD Mark, or any reproduction, or colorable imitation thereof;

(b) using any false designation or representation of origin in connection with the offering for sale or sale of goods or services, or any false description or representation, including words or other symbols, tending falsely to describe or represent Defendants as NY FIRE WATER MOLD or associated or connected to NY FIRE WATER MOLD, or Defendants' goods or services as being those of NY FIRE WATER MOLD, or sponsored by or as being associated with NY FIRE WATER MOLDS, and from offering such services in commerce;

(c) engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure NY FIRE WATER MOLD's business reputation;

(d) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services advertised, promoted, offered for sale or sold by them are in any manner associated or connected with NY FIRE WATER MOLD, or that they are NY FIRE WATER MOLD or are associated with or connected to NY FIRE WATER MOLD;

(e) destroying, altering, removing or otherwise disposing of any books or records which contain any information relating to the marketing, promotion, offering for sale and sale of products or services which infringe the NY FIRE WATER MOLD Mark; and

(f) effecting assignments or transfers, forming new entities or associations or utilizing any other devise for the purpose of circumventing or avoiding the prohibitions set forth in Paragraphs (a) through (e).

In order to give effect to the permanent injunction, Defendants are directed to deliver up for destruction to NY FIRE WATER MOLD all products, advertisements and promotional materials in its possession or under its control bearing the NJNY FIRE WATER MOLD name including but not limited to the njnyfirewatermold.com domain name.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a default judgment is GRANTED. Specifically, the motion is granted to the extent Plaintiffs are awarded: (1) actual damages in the amount of $1,115.04; (2) costs in the amount of $637.10; (3) attorneys' fees in the amount of $12,080.00; (4) post-judgment interest as calculated under 28 U.S.C. § 1961; and (5) a permanent injunction barring Defendants from any further infringement of Plaintiffs' mark, as set forth herein.

Plaintiffs' counsel is directed to send a copy of this Opinion and Order and the Judgment to Defendants.

The Clerk of the Court is respectfully directed to enter Judgment in favor of Plaintiffs in accordance with the terms of this Opinion and Order and close this case.

**SO ORDERED:**

Dated: White Plains, New York
October 15, 2026

Philip M. Halpern
United States District Judge